IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL G. CHALFONT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| U.S. ELECTRODES, ET AL. | : | NO. 10-2929 |

<u>MEMORANDUM</u>

**Padova, J.**                                                                    **December 28, 2010**

      Plaintiff Michael G. Chalfont filed this employment discrimination action alleging that he lost, and was not rehired for, a job as Engineering Manager for Defendant U.S. Electrodes on account of his disabled status and age. In addition to asserting claims against U.S. Electrodes, he asserts claims against CenterLine (Windsor) Limited ("CenterLine"), which he alleges is the parent company of U.S. Electrodes, and David M. Beneteau, the President of U.S. Electrodes and a vice president of CenterLine. Defendants have moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, we grant the Motion in part and deny it in part.

## I.     BACKGROUND

      The Amended Complaint alleges that CenterLine is a Canadian company, which manufactures custom-designed welding and metalwork equipment and distributes its products worldwide. (Am. Compl. ¶ 11.) In 1991, it formed U.S. Electrodes for the purpose of manufacturing welding cap electrodes, primarily for the automobile industry. (Id. ¶ 12.) CenterLine representatives, including Beneteau, approached Plaintiff, who had expertise in making cap electrodes using an advanced cold-forming technique, and asked him to assist in creating, designing and implementing a manufacturing facility for U.S. Electrodes in Telford, Pennsylvania. (Id. ¶¶ 13-

14.)  On May 31, 1991, U.S. Electrodes hired Plaintiff as the Engineering Manager for its Telford facility.  (Id. ¶ 16.)  Throughout his almost eighteen years of employment, Plaintiff performed his job in a satisfactory manner.  (Id. ¶ 28.)  Nevertheless, on January 6, 2009, Plaintiff was laid off from his position with the company.  (Id.)

Plaintiff alleges that the following events preceded his layoff.  On May 21, 2007, Plaintiff suffered an acute myocardial infarction.  (Id. ¶ 22.)  He was "diagnosed with coronary artery disease, status post myocardial infarction, and was started on a drug protocol."  (Id.)  Plaintiff informed "CenterLine management of his heart condition and treatment."  (Id. ¶ 23.)  Thereafter, in October 2007, Plaintiff was diagnosed with Acute Myelogenous Leukemia.  (Id. ¶ 24.)  He promptly informed U.S. Electrodes's General Manager, Barry Clymer, of his diagnosis and need for treatment, and Clymer, in turn, informed management officials at CenterLine.  (Id. ¶¶ 24-25.)

Plaintiff was on medical leave from U.S. Electrodes for chemotherapy treatment from October 2007 until May 2008.  (Id. ¶ 26.)  He returned to light duty work on May 5, 2008, due to limitations on his ability to do heavy lifting and extremely strenuous activity.  (Id.)  On January 18, 2009, Clymer advised Plaintiff, who was then 59 years old, that he was being temporarily laid off due to lack of work.  (Id. ¶¶ 36, 55.)  At the same time, the company's production employees were also laid off.  (Id. ¶ 37.)  In contrast, "key administrative staff," including Clymer and Defendant Beneteau, retained their jobs.  (Id.)  Beginning on February 8, 2009, U.S. Electrodes recalled most of its production staff, but did not recall Plaintiff.  (Id. ¶¶ 39-40.)  "[M]anagement officials at CenterLine made statements to the effect that they wanted to get rid of Plaintiff because he would be a 'liability' if his cancer reoccurred or he relapsed."  (Id. ¶ 41.)  Meanwhile, Plaintiff's duties were reassigned to younger employees.  (Id. ¶ 42.)  On May 15, 2009, U.S. Electrodes informed Plaintiff

that his medical benefits were ending effective June 30, 2009.  (Id. ¶ 44.)

In June 2009, CenterLine's Board of Directors decided to in-source production of cap electrodes at CenterLine's Canadian facility.  (Id. ¶ 45.)  As a result, manufacturing operations at U.S. Electrodes's Telford facility were moved to a CenterLine facility in Canada.  (Id.)  In June and July 2009, Plaintiff met with Beneteau and asked that he be considered for a position with CenterLine.  (Id. ¶ 46.)  However, neither Beneteau nor any representative of U.S. Electrodes or CenterLine offered Plaintiff employment.  (Id. ¶ 47.)  In contrast, other employees who had been laid off were offered employment at CenterLine.  (Id. ¶ 48.)  These employees were younger and had less experience than Plaintiff.  (Id.)

Plaintiff commenced this action against U.S. Electrodes, CenterLine and Beneteau in June of 2010.  He asserts claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 951 et seq., and section 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 2240.  He also asserts a breach of contract claim.[1]  Plaintiff essentially alleges that he was laid off and not rehired on account of his age and disability, in order to deprive him of rights to which he was entitled under an employee benefit plan, and in breach of an employment contract. Defendants have moved to dismiss the Amended Complaint in its entirety for failure to state claims upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[1]Plaintiff also asserted a claim under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq.  However, he has agreed to the voluntary dismissal of that claim.  (See Pl. Br. at 2 n.2.)  We therefore dismiss the FMLA claim.

## II.    LEGAL STANDARD

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), we look primarily at the facts alleged in the complaint and its attachments.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  Legal conclusions, however, receive no deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Twombly, 550 U.S. at 555 (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  In this regard, it is not  "sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Phillips, 515 F.3d at 233 (alteration in original) (quoting Twombly, 550 U.S. at 563 n.8)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).  In the end, we will grant a Rule 12(b)(6) motion if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level."  Twombly, 550

U.S. at 555 (citing 5 C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 1216, at 235-36 (3d ed. 2004)).

## III. DISCUSSION

Defendants argue that Plaintiff has failed to state claims upon which relief may be granted against any of the three Defendants for a number of reasons. First, they argue that Plaintiff has not and cannot state ADA, ADEA or PHRA claims against CenterLine based on his job loss, because CenterLine was not his employer. Second, they argue that Plaintiff has not and cannot state claims against CenterLine under the ADEA, ADA and PHRA based on CenterLine's own failure to hire him following his lay off because CenterLine is a foreign corporation that is not subject to the statutory prohibitions on discriminatory hiring. Third, they argue that we should dismiss the ADA, ADEA and PHRA claims against Centerline because Plaintiff failed to exhaust his administrative remedies against CenterLine. Fourth, they argue that we should dismiss Plaintiff's ADEA claim against U.S. Electrodes because he has not alleged that U.S. Electrodes had twenty employees during the relevant time period, as the statute requires. Fifth, they argue that Plaintiff has not stated a claim under the ADEA and PHRA against any Defendant for age discrimination because he has failed to allege facts that plausibly suggest that he was laid off because of his age. Sixth, they argue that Plaintiff has not stated a claim under the ADA and PHRA against any Defendant for disability discrimination because he has failed to allege facts supporting his assertion that he is disabled. Seventh, they argue that Plaintiff has not alleged the necessary elements of a claim under ERISA. Eighth, they argue that Plaintiff, as an at-will employee, has not and cannot state a cognizable breach of contract claim based on his termination. We will address each argument in turn.

A.    CenterLine as Employer

Defendants argue that Plaintiff cannot assert ADA, ADEA or PHRA claims against CenterLine based on his initial job loss and U.S. Electrodes's failure to rehire him, because he has not alleged sufficient facts to support a plausible claim that CenterLine was his employer. Plaintiff does not dispute that only an employer can be held statutorily liable for an allegedly discriminatory lay-off. He argues, however, that the allegations in his Amended Complaint are sufficient to support a claims against both U.S. Electrodes and CenterLine as his employers, relying on authority that permits two related entities to be considered either a "single employer" or a "joint employer" under certain specified circumstances.

1. Single Employer

As a general matter, "when a subsidiary hires employees, there is a strong presumption that the subsidiary, not the parent company, is the employer." Marzano v. Computer Science Corp., Inc., 91 F.3d 497, 513 (3d Cir. 1996) (citation omitted); see also Ziegler v. Delaware County Daily Times, 128 F. Supp. 2d 790, 801 (E.D. Pa. 2001) (stating that "there is a presumption that a corporate parent is not the ADEA 'employer' of its subsidiaries' employees"). However, a parent company can be considered a "single employer" with its subsidiary if the parent has directed the subsidiary's discriminatory act, or if the affairs of the parent and subsidiary are so operationally or financially entangled that, as an equitable matter, we must consider them substantively consolidated and collectively responsible for the discriminatory conduct. See Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 85-87 (3d Cir. 2003). Plaintiff argues that the allegations of the Amended Complaint are sufficient to set forth a plausible claim under either of these two "single employer" theories.

a.     Parent's Direction of Subsidiary's Discriminatory Act

Plaintiff first argues that the Amended Complaint sufficiently alleges that CenterLine directed U.S. Electrodes's discriminatory acts.  He relies on the allegations in the Amended Complaint that the President of U.S. Electrodes, which laid him off, is a Vice President of CenterLine; that CenterLine knew about Plaintiff's health problems and medical treatment, regarded him as having a disability, and wanted to get rid of him because he would be a liability if the cancer recurred; and that CenterLine's Board of Directors made a decision to in-source the work done at the Telford plant five months after Plaintiff was laid off, and then did not offer him a job in Canada.  (Am. Compl. ¶¶ 10, 23-25, 34, 41, 45.)

However, these allegations do not support a plausible claim that CenterLine directed U.S. Electrodes to discriminate against Plaintiff based on his age or disability.  Indeed, Plaintiff never explicitly alleges that CenterLine instructed or directed U.S. Electrodes to lay off Plaintiff in January of 2009, or to refuse to re-hire him thereafter.  Instead, he asks us to infer such direction from the above-stated events, which, at best, give rise only to a "sheer possibility" that CenterLine directed U.S. Electrodes to discriminate against him based on his age or a disability.  Iqbal, 129 S. Ct. at 1949 ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." (citing Twombly, 550 U.S. at 556)).  Accordingly, we conclude that Plaintiff has not stated a plausible discrimination claim against CenterLine as his employer based on CenterLine's alleged direction of U.S. Electrodes's discriminatory conduct.

b.     Substantive Consolidation

Plaintiff argues, in the alternative, that the Amended Complaint sufficiently pleads that CenterLine and U.S. Electrodes were substantively consolidated such that they can be considered

a "single employer" under that standard. "Substantive consolidation is a equitable remedy and is difficult to achieve." Nesbit, 347 F.3d at 86. In ascertaining whether the "operations of the companies are so united that nominal employees of one company are treated interchangeable with those of another," we consider the following relevant factors:

> (1) the degree of unity between the entities with respect to ownership, management (both directors and officers), and business functions (*e.g.*, hiring and personnel matters), (2) whether they present themselves as a single company such that third parties dealt with them as one unit, (3) whether a parent company covers the salaries, expenses, or losses of its subsidiary, and (4) whether one entity does business exclusively with the other.

Id. at 87.

Plaintiff relies on the following factual allegations to support his argument that he has adequately alleged substantive consolidation: Defendant Beneteau is an officer of both CenterLine and U.S. Electrodes (Am Compl. ¶ 10); "CenterLine representatives" originally approached him regarding the "creation, design and development" of U.S. Electrodes's manufacturing facility (id. ¶ 13); CenterLine's corporate profile includes a description of the cap electrodes that U.S. Electrodes manufactures (id. ¶ 17); the supply of cap electrodes from U.S. Electrodes allowed CenterLine to be a "one stop shop" for customers (id. ¶ 19); and CenterLine ultimately made the decision to in-source the manufacture of cap electrodes. (Id. ¶ 45.) The Amended Complaint also alleges that U.S. Electrodes's products are exclusively distributed by CenterLine. (Id. ¶ 12.)

We conclude that these allegations do not support a plausible claim that U.S. Electrodes and CenterLine are so operationally or financially entangled that "employees of one company are treated interchangeably with those of [the other]." Nesbit, 347 F.3d at 87. Indeed, the Amended Complaint does not allege: (1) that the companies have the same ownership or management (aside from a

single shared officer); (2) that the two companies routinely make collective decisions regarding hiring and firing, as well as other personnel matters; (3) that the two companies maintain joint payrolls and finances; or (4) that third parties considered the two companies to be one. See generally id. at 88-89. Indeed, the few allegations in the Amended Complaint concerning the relationship between the two companies suggest almost nothing inconsistent with a more traditional parent-subsidiary relationship. As such, the Amended Complaint does not allege sufficient facts to raise a reasonable inference that CenterLine and U.S. Electrodes are a "single employer" under a substantive consolidation theory.

### 2. Joint Employer

Plaintiff briefly argues, as another alternative, that he has sufficiently alleged that CenterLine and U.S. Electrodes qualify as a "joint employer" because the Amended Complaint contains factual allegations from which it can be inferred that the two companies exercised significant control over the same employees.[2] See, e.g., Myers v. Garfield & Johnson Enters., 679 F. Supp. 2d 598, 607 (E.D. Pa. 2010). In determining whether there is a "joint employer" relationship, courts look to the following factors:

> (1) authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (2) day-to-day supervision of employees, including employee discipline; and (3) control of employee records, including payroll, insurance, taxes, and the like.

---

[2]In a "single employer" relationship, "'nominally separate entitles are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a single employer.'" Myers v. Garfield & Johnson Enters., 679 F. Supp. 2d 598, 607 (E.D. Pa. 2010) (quoting NLRB v. Browning-Ferris Indus. of Pa., 691 F.23d 1117, 1122 (3d Cir. 1982)). "Joint employers," in contrast, are "'independent legal entities that have merely historically chosen to handle jointly important aspects of their employer-employee relationship.'" Id. (quoting Browning-Ferris, 691 F.2d at 1122)).

Id. (quoting Butterbaugh v. Chertoff, 479 F. Supp. 2d 485, 494 (W.D. Pa. 2007)). The Amended Complaint contains no allegations directly pertaining to any of these three factors or that otherwise give rise to any inference that CenterLine was involved in day-to-day employee matters at U.S. Electrodes. In arguing otherwise, Plaintiff relies only on his allegations that CenterLine approached him in 1991 to seek his assistance in the development of the U.S. Electrodes's Telford facility, and that U.S. Electrodes's President, David Beneteau, was also an officer of CenterLine and made certain decisions about Plaintiff's employment. (See Pl.'s Br. at 20.) However, these allegations are plainly insufficient to plausibly support an inference that CenterLine is a "joint employer" under the three factor test set forth above.

For the foregoing reasons, we conclude that the Amended Complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" against CenterLine as Plaintiff's employer, either under a joint employer theory or a single employer theory. Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). We therefore dismiss the ADEA, ADA and PHRA claims against CenterLine. Plaintiff has, however, requested that, if we dismiss his ADEA, ADA, and PHRA claims against CenterLine on this basis, we permit him leave to amend to allege additional facts that give rise to a plausible claim. Because we are not convinced that he will be unable to allege facts that could state a plausible claim against CenterLine as his employer in connection with his lay-off from U.S. Electrodes and U.S. Electrodes's refusal to rehire him, we will grant him the requested leave to amend.

B.     CenterLine as Prospective Employer

Defendants also argue that we should dismiss the ADA, ADEA and PHRA claims against CenterLine to the extent that the claims assert that CenterLine discriminated against Plaintiff by

failing to hire Plaintiff for a position in Canada. In this regard, they argue, among other things, that these three statutes do not apply to foreign operations of a "foreign person not controlled by an American employer." 42 U.S.C. § 12112(c)(2)(B); 29 U.S.C. § 623(h)(2); see also Denty v. SmithKline Beecham Corp., 109 F.3d 147, 151 n.7 (3d 1997) (recognizing same essential restriction under the PHRA). Here, they note, Plaintiff alleges that CenterLine is a Canadian corporation, headquartered in Canada, and does not allege that CenterLine is controlled by any American company. (See Am. Compl. ¶ 9.)

Plaintiff has not responded to this argument, and Defendants are correct that these statutes do not apply to employment decisions made by foreign corporations regarding positions located outside the United States. Accordingly, we dismiss Plaintiff's ADA, ADEA and PHRA claims without leave to amend insofar as those claims assert that CenterLine itself discriminated against Plaintiff by failing to hire Plaintiff in Canada following his January 2009 lay off from U.S. Electrodes.

C.    Exhaustion of Administrative Remedies against CenterLine

Defendants also argue that Plaintiff's ADEA, ADA and PHRA claims should be dismissed because Plaintiff failed to exhaust his administrative remedies against CenterLine in that he did not name CenterLine as a Respondent in the administrative complaint that he jointly filed with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). A discrimination complaint may ordinarily be brought only against a party previously named in an administrative complaint. See Schafer v. Board of Public Educ., 903 F.2d 243, 251-52 (3d Cir. 1990) (citation omitted); Snead v. Hygrade Food Products Assocs., Civ. A. No. 98-2657, 1998 WL 910223, at *2 (E.D. Pa. Dec. 28, 1998). The purpose of this rule is to "alert the

implicated parties and to encourage an informal conciliation process in lieu of trial." Kunwar v. Simco, 135 F. Supp. 2d 649, 653 (E.D. Pa. 2001) (citing Dreisbach v. Cummins Diesel Engines, Inc., 848 F. Supp. 593, 595 (E.D. Pa. 1994)). However, the requirement that a party be named in the administrative complaint may be excused when the plaintiff is not represented by counsel at the administrative level, the unnamed respondent received notice of the administrative action, and there is a shared commonality of interest between the unnamed respondent and a named respondent. Schafer, 903 F.2d at 252 (citing Glus v. G.C. Murphy Co., 629 F.2d 248, 251 (3d Cir. 1980)); Cronin v. Martindale Andres & Co., 159 F. Supp. 2d 1, 9 (E.D. Pa. 2001) (citations omitted).

In this case, Plaintiff alleges in the Amended Complaint that he exhausted his federal administrative remedies by filing PHRC and EEOC claims, and obtaining a right to sue letter on March 22, 2010. (Am. Compl. ¶ 3.) However, the original administrative complaint, which both Defendants and Plaintiff have submitted to the Court, does not name CenterLine as a Respondent.[3] Plaintiff argues in his response to Defendant's Motion that he nevertheless exhausted his administrative remedies because he was not represented by counsel when the administrative complaint was filed, CenterLine had actual notice of the Complaint, and CenterLine and U.S. Electrodes, which was named as a Respondent, had a commonality of interest. There are, however, no such allegations in the Amended Complaint. Accordingly, if Plaintiff opts to file a second amended complaint that asserts additional facts with respect to his age and disability discrimination claims against CenterLine, he should also address these pleading deficiencies with respect to the

---

[3]Plaintiff has also submitted, in addition to the original administrative complaint, an amended administrative complaint, which Plaintiff apparently filed with the PHRC and/or EEOC after he was issued a right to sue letter. (Pl.'s Ex. 7). The amended administrative complaint lists U.S. Electrodes and CenterLine as two separate respondents in the caption. We are not certain of the relevance of the amended complaint, given the timing of its alleged filing.

exhaustion of his administrative remedies as to CenterLine.

        D.      U.S. Electrodes as Employer

Defendants further argue that Plaintiff's ADEA claim against U.S. Electrodes should be dismissed because the ADEA only applies to employers with 20 or more employees. See 29 U.S.C. § 630(b). Here, they argue, Plaintiff has not alleged the number of employees that U.S. Electrodes had during the relevant time period and, in fact, U.S. Electrodes did not have more than 20 employees at the relevant time. Plaintiff's response to this argument is essentially the same as his response to the argument that CenterLine is not his employer, that is, he argues that U.S. Electrodes and CenterLine are either a joint employer or a single employer and, as such, their employees can be counted together for purposes of meeting the ADEA's numerical threshold for employees. See, e.g., Nesbit, 347 F.3d at 85-87.

We will therefore dismiss Plaintiff's ADEA claim against U.S. Electrodes with leave to amend, for essentially the same reasons that we dismissed the ADEA, ADA, and PHRA claims against CenterLine based on U.S. Electrodes's conduct in laying off Plaintiff and failing to rehire him. If Plaintiff pursues his ADEA claim against U.S. Electrodes in a second amended complaint, he should explicitly plead the number of employees that U.S. Electrodes had during the relevant time period and, if that number is twenty or less, he should also plead facts to support a claim that the employees of U.S. Electrodes and CenterLine may be counted together for purpose of meeting the ADEA's statutory requirement that an employer have more than 20 employees.

        E.      Age Discrimination Claims against U.S. Electrodes

Defendants also argue that Plaintiff has failed to state a claim against U.S. Electrodes that he was terminated on account of his age in violation of the ADEA and the PHRA, because he has

not pled the requisite causation between his age and his termination. "To state a claim for age discrimination under the ADEA, a plaintiff must allege that (1) he is over 40, (2) he is qualified for the position in question, (3) he suffered from an adverse employment decision, and (4) his replacement was sufficiently younger to permit a reasonable inference of age discrimination."[4] Hill v. Borough of Kutztown, 455 F.3d 225, 247 (3d Cir. 2006) (footnote and citation omitted). "The same legal standard applies to a claim under the PHRA as applies to an ADEA claim." Id. (citing Kautz v. Met-Pro Corp., 412 F.3d 463, 466 n.1 (3d Cir. 2005)).

Here, Plaintiff has alleged that he is over 40, that he was qualified for the position that he occupied for eighteen years, that he was laid off, and that his duties were reassigned to younger employees. Defendants nevertheless argue that Plaintiff has failed to allege a plausible age discrimination claim under the Twombly standard, because he alleges that his job loss was the result of a company-wide layoff, making it implausible that his job loss was due to his age. However, Plaintiff also alleges that, less than three weeks after his layoff, U.S. Electrodes began recalling most of its production staff, but did not recall Plaintiff, and that his prior duties were assigned to younger employees. Accordingly, we conclude that Plaintiff has adequately alleged the basic elements of an age discrimination under either the ADEA or the PHRA. Consequently, although we have dismissed Plaintiff's ADEA claim against U.S. Electrodes because the Amended Complaint does not allege that U.S. Electrodes had more than 20 employees, see section III. D. above, we decline to dismiss Plaintiff's PHRA age discrimination claim.

---

[4]These four elements apply when a case is proceeding based on indirect evidence of discrimination. See generally McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Plaintiff appears to be relying on indirect evidence here.

F.    Disability Discrimination Claims against U.S. Electrodes

Defendants also argue that Plaintiff has failed to state claims for disability discrimination against U.S. Electrodes under the ADA and PHRA because Plaintiff has not alleged (1) a valid disability or (2) that U.S. Electrodes regarded him as disabled.  The ADA prohibits employers from discriminating "against a qualified individual on the basis of a disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  Moreover, "[a]n 'analysis of an ADA claim applies equally to a PHRA claim.'"  Williams v. Phila. Housing Auth. Police Dep't, 380 F.3d 751, 761 n.6 (3d Cir. 2004) (quoting Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999)).

The ADA defines "disability" as:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment . . . .

42 U.S.C. § 12102(1).  The definition of disability "shall be construed in favor of broad coverage of individuals." Id. § 12102(4)(A).  Plaintiff asserts that he has alleged facts to support cognizable claims of a disability under either paragraph (A) or (C).

For purposes of paragraph (A), "major life activities" include not only activities such as "seeing, hearing, eating, sleeping, walking, . . . breathing, . . . concentrating, . . . and working," but also the operation of major bodily functions, such as normal cell growth, digestive functions, circulatory functions, and respiratory functions. Id. § 12102(2)(A), (B). Moreover, "[a]n impairment

that is episodic or in remission" still qualifies as a disability "if it would substantially limit a major life activity when active."  Id. § 12102(4)(D).

Applying these standards, we conclude that Plaintiff has adequately alleged a disability under paragraph (A) because he has alleged that he has leukemia and heart disease; that he was on medical leave from work from October 2007 until May 2008 to undergo chemotherapy; and that his cancer is currently in remission, but is a lifelong condition, which at times causes him to be fatigued and subject to easy bleeding and bruising.  (Am. Compl. ¶¶ 22, 24, 26, 30-33.)  He also alleges that he is substantially limited in the major life activity of normal cell growth and circulatory function.  (Id. ¶ 52.)  Accordingly, we decline to dismiss Plaintiffs disability discrimination claims against U.S. Electrodes under Fed. R. Civ. P. 12(b)(6).

G.      ERISA Claim

Defendants also argue that we should dismiss Plaintiff's ERISA claims against all three Defendants for failure to state claims upon which relief may be granted and because Plaintiff seeks certain damages to which he is not entitled under the statute.  Under section 510 of ERISA:

> It shall be unlawful for any person to discharge . . .  or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

29 U.S.C. § 1140.  "To establish a prima facie case under [this section], an employee must demonstrate (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled."  Gavalik v. Continental Can Co., 812 F.2d 834, 852 (3d Cir.1987) (citing 29 U.S.C.  § 1140).  Plaintiff need not allege that the sole reason for his  termination was to interfere with his rights under an employee benefit plan, but

must nevertheless allege facts suggesting that the defendant had a specific intent to interfere with his rights and that he did not merely suffer an incidental loss of benefits as the result of a termination. Id. at 851 (citations omitted).

In this case, Plaintiff alleges that the three Defendants "discharged or otherwise discriminated against [him] for exercising rights to which he was entitled under the provision of an employee benefit plan, or for the purpose of interfering with the attainment of rights to which he may have become entitled under the plan . . . ." (Am. Compl. ¶ 68.) He explains in his Memorandum in response to Defendants' Motion to Dismiss that he grounds his ERISA claim on his allegations that he suffered from cancer and heart disease, that CenterLine management officials expressed that they wanted to get rid of him because he would be a "liability" if his cancer recurred or he relapsed, and that he was laid off, not recalled, and not considered for employment at CenterLine. (Id. ¶¶ 33, 36, 40, 41, 47.) He specifically alleges in his Amended Complaint that "Defendant did not want to incur the additional costs related to a reoccurrence of cancer or coronary artery disease and therefore did not recall Plaintiff after its lay-off." (Id. ¶ 69.)

Defendants argue that these allegations are insufficient because, among other things, Plaintiff has not specifically alleged that he is a participant or beneficiary of an ERISA-covered benefit plan and has not pled facts to suggest that U.S. Electrodes or Beneteau – as opposed to CenterLine – had the requisite specific intent to interfere with his rights under such plan. We conclude, however, that Plaintiff has adequately stated a claim under ERISA as his allegations either state explicitly or give rise to a reasonable inference that he suffered from a medical condition that is subject to recurrence and which already required him to take one extended leave of absence; that the Defendants were all aware of his condition; and that Plaintiff was terminated, in part, to interfere with his right to obtain

-17-

benefits under his health plan.  We therefore decline to dismiss the ERISA claim for failure to state a claim upon which relief may be granted.

Defendants also argue that we should dismiss Plaintiff's ERISA claim because he seeks compensatory and punitive damages that are not available under the statute, which provides only for equitable relief.  <u>See</u> 29 U.S.C. § 1132(a)(3).  Plaintiff concedes that he is not entitled to punitive damages under ERISA and, thus, we dismiss that aspect of his damages claim.  We will not, however, dismiss this claim in its entirety solely because Plaintiff may have mischaracterized the relief he seeks in connection with this claim.  To the contrary, we will permit him to proceed with his claim and address the proper remedy if and/or when a remedy becomes necessary.

H.　　　<u>Breach of Contract Claim</u>

Defendants argue that we should dismiss Plaintiff's breach of contract claim against U.S. Electrodes and CenterLine pursuant to Fed. R. Civ. P. 12(b)(6), because Plaintiff did not have an employment contract with either company.  Under Pennsylvania law, there is a presumption that, in the absence of a written employment contract, employment is at-will.  <u>McLaughlin v. Gastrointestinal Specialists, Inc.</u>, 750 A.2d 283, 287 (Pa. 2000).  In order to overcome that presumption of at-will employment, a plaintiff must allege "an implied-in-fact contract, which may be established . . . by the employee providing 'additional consideration.'"  <u>Woods v. Era Med LLC</u>, 677 F. Supp. 2d 806, 817 (E.D. Pa. 2010) (citing <u>Scully v. U.S. WATS, Inc.</u>, 238 F.3d 497, 505 (3d Cir. 2001)).  "The term 'additional consideration' refers to an employee affording an employer a substantial benefit, or undergoing a substantial hardship, other than the services which the employee was hired to perform."  <u>Id.</u> (citing <u>Stumpp v. Stroudsburg Mun. Auth.</u>, 658 A.2d 333, 335 (Pa. 1995)).  "Still, once an employee has provided additional consideration, he is only protected from

-18-

discharge without cause for a reasonable amount of time." Buckwalter v. ICI Explosives USA, Inc., Civ. A. No. 96-4795, 1998 WL 54355, at *8 (E.D. Pa. Jan. 8, 1998) (citation omitted); see also Harsco Corp. v. Zlotnicki, 779 F.2d 906, 910-11 (3d Cir. 1985) ("When . . . there is 'a showing that an employee has rendered . . . additional consideration, . . . the duration of the employment contract is deemed to be for a reasonable period of time.'" (citation omitted)).

Plaintiff claims that U.S. Electrodes and CenterLine breached an employment contract with him by laying him off without just cause over seventeen years after hiring him. In his view, he has adequately alleged facts to support an implied in-fact contract because he alleges that he "provided substantial additional consideration to Defendants . . . in the form of providing his own equipment and design services to manufacture cold form electrodes" and has made, "[t]hroughout the last nineteen years," unspecified "substantial financial and personal commitments to Defendants." (Am. Compl. ¶¶ 77, 79.)

However, even assuming that the "provision of equipment and design services to manufacture cold form electrodes" and Plaintiff's other unenumerated "financial and personal commitments" were outside the scope of services that Plaintiff was hired to perform, it is simply implausible that such consideration gave rise to an implied in-fact contract that protected Plaintiff from discharge for over seventeen years. "Indeed, in the few cases where courts have found an implied employment contract, the employees in question were terminated after extremely brief periods of employment" of between four days and three months. Clinkscales v. Children's Hospital of Philadelphia, Civ. A. No. 06-3919, 2009 WL 1259104, at *7 n.11 (E.D. Pa. May 7, 2009) (listing cases). Moreover, numerous courts have refused to find implied in-fact contracts for much shorter terms than seventeen years, essentially reasoning that those shorter terms exceeded the reasonable

duration of an implied in-fact contract.  See, e.g., Veno v. Meredith, 515 A.2d 571, 580 n.4 (Pa. Super. Ct. 1986) (stating that the reasonably length of time of an implied in-fact contract had "surely passed" eight years after employment began); Clinkscales, 2009 WL 295104, at *7 (dismissing claim for breach of an implied employment contract after fifteen months of employment, explaining that employer was not required to employ Plaintiff for any longer than that reasonable period); Zysk v. FFE Minerals USA, Inc., 225 F. Supp. 2d 482, 502 (E.D. Pa. 2001) ("Even if we assume . . . that [plaintiff's] case is one of those 'rare instances' in which an implied in-fact contract for a reasonable period of time was created, we hold as a matter of law that his two-plus years of employment with Defendant more than fulfilled the required 'reasonable period.'" (citations omitted)); Richardson v. Arco Chemical Co., Civ. A. No. 95-6185, 1996 WL 482911, at *9-*10 (E.D. Pa. Aug. 26, 1996) (finding that plaintiff who moved to new state for job could not establish that such "'additional consideration' entitled her to just cause status for a period of more than five years.")

We conclude that Plaintiff has not and cannot allege facts that could support an implied in-fact contract that lasted over seventeen years.  We therefore dismiss Plaintiff's breach of contract claim for failure to state a claim upon which relief may be granted.  Moreover, we do not grant Plaintiff leave to amend the breach of contract claim, because we conclude that amendment would be futile under the circumstances.

IV.    **CONCLUSION**

For the foregoing reasons, we grant Defendants' Motion to Dismiss insofar as it seeks dismissal of the ADA, ADEA and PHRA claims against CenterLine, the ADEA claim against U.S. Electrodes, and the breach of contract claim against both CenterLine and U.S. Electrodes.  With the consent of the parties, we also dismiss Plaintiff's claims under the FMLA and his claim for punitive

damages under ERISA.  We deny the Motion to Dismiss in all other respects.  Plaintiff may amend his ADA, ADEA and PHRA claims against CenterLine insofar as those claims rest on U.S. Electrodes's conduct in laying off Plaintiff and failing to rehire him, provided that he can allege facts to support his assertion that CenterLine was his employer and that he properly exhausted his administrative remedies against CenterLine.  Plaintiff may also amend his ADEA claim against U.S. Electrodes to allege that U.S. Electrodes had the requisite number of employees under the ADEA, either in its own right or as a joint or single employer with CenterLine.

An appropriate order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.